UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No.

APPROXIMATELY $41,418.00 IN UNITED STATES CURRENCY,

Defendant.

---

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM**

---

The United States of America, by its attorney, Elizabeth M. Monfils, Assistant United States Attorney for the Eastern District of Wisconsin, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**Nature of the Action**

1. This is a civil action to forfeit property to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

**The Defendant In Rem**

2. The defendant property, approximately $41,418.00 in United States currency, was seized on or about January 27, 2026, from Nikolous McNab at or near 5XXX 16th Avenue, Kenosha, Wisconsin.[1]

3. The defendant property is presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

---

[1] Throughout this complaint, certain information has been redacted using the letter "X" as a means of avoiding the revelation of any personal information.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for Forfeiture

7. The defendant property, approximately $41,418.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

## Facts

8. Marijuana is a Schedule I controlled substance under 21 U.S.C. § 812.

9. Tetrahydrocannabinol ("THC") is a Schedule I controlled substance under 21 U.S.C. § 812.

10. Psilocybin is a Schedule I controlled substance under 21 U.S.C. § 812.

11. Oxycodone is a Schedule II controlled substance under 21 C.F.R. § 1308.12.

12. Adderall (an amphetamine) is a Schedule II controlled substance under 21 C.F.R. § 1308.12.

13. Hydrocodone is a Schedule II controlled substance under 21 C.F.R. § 1308.12.

**Background investigation**

14. In October 2025, officers began investigating the drug trafficking activities of Nikolous McNab, who was identified as a source of supply for a drug trafficking organization.

15. During the investigation, a confidential informant ("CI") stated that CI had purchased marijuana from Nikolous McNab multiple times inside McNab's residence located at 5XXX 16th Avenue, Kenosha, Wisconsin (the "Kenosha residence").

16. During those purchases of marijuana from Nikolous McNab, the CI further stated the following:

A. When CI arrived at McNab's Kenosha residence, McNab took CI to the basement where there was a safe containing pounds of marijuana. McNab removed several pounds of marijuana from the safe.

B. The CI would then pick the flavor or strain of marijuana that CI wanted, and McNab weighed out the quantity that CI requested.

C. At various times, the CI had seen over 10 pounds of marijuana as well as pounds of THC wax at McNab's Kenosha residence.

**CI's controlled buys of marijuana from Nikolous McNab**

17. On October 20, 2025, the CI purchased approximately 34.51 grams of marijuana from Nikolous McNab at the Kenosha residence for $100.

A. Prior to the buy, the CI called McNab regarding the purchase of marijuana, and McNab agreed to sell the CI one ounce of marijuana.

B. When the CI arrived at the Kenosha residence, McNab took CI to the basement, opened a large safe, removed several bags of marijuana and jars of THC wax, and placed the marijuana and THC wax on a counter next to the safe. The CI estimated there were approximately three pounds of marijuana and two pounds of THC wax.

C. The CI chose the flavor of marijuana CI wanted to purchase. McNab weighed out approximately one ounce of the marijuana, placed it in a baggie, and handed it to the CI. The CI then handed McNab $100 and left the Kenosha residence.

D. The CI saw in the McNab's basement a tent commonly used to grow plants but was unable to see what plants were inside the tent.

18. On October 30, 2025, the CI purchased approximately 34.75 grams of marijuana from Nikolous McNab at the Kenosha residence for $100.

A. Prior to the buy, the CI called McNab regarding the purchase of marijuana, and McNab agreed to sell marijuana to the CI.

B. When the CI arrived at the Kenosha residence, McNab took CI to the basement, opened a large safe, removed several bags of marijuana, and placed those bags on a counter next to the safe. The CI estimated there were approximately six pounds of marijuana.

C. The CI chose the flavor of marijuana CI wanted to purchase. McNab weighed out approximately one ounce of the marijuana, placed it in a baggie, and handed it to the CI. The CI then handed McNab $100 and left the Kenosha residence.

19. On January 22, 2026, the CI purchased approximately 33.73 grams of marijuana from Nikolous McNab at the Kenosha residence for $100.

A. Prior to the buy, the CI called McNab regarding the purchase of marijuana, and McNab agreed to sell marijuana to the CI.

B. When the CI arrived at the Kenosha residence, McNab took CI to the basement, opened a large safe, removed several bags of marijuana, and placed those bags on a counter next to the safe. The CI estimated there were approximately three pounds of marijuana.

C. The CI chose the flavor of marijuana CI wanted to purchase. McNab weighed out approximately one ounce of the marijuana, placed it in a baggie, and handed it to the CI. McNab also gave the CI a 10-pack box of THC vape cartridges for free. The CI then handed McNab $100 and left the Kenosha residence.

20. All three controlled buys were audio and video recorded.

**January 27, 2026, execution of search warrant at Nikolous McNab's Kenosha residence**

21. On January 27, 2026, officers executed a search warrant at the residence of Nikolous McNab, 5XXX 16th Avenue, Kenosha, Wisconsin.

22. Prior to executing the search warrant, surveilling officers at the Kenosha residence saw two separate short-term contacts at the Kenosha residence that appeared to be drug sales.

A. At approximately 2:21 p.m., a Ford Escape arrived at the Kenosha residence and parked in the driveway. A male passenger exited the vehicle, walked to the front door, where someone let him inside.[2] At approximately 2:25 p.m., the male exited the Kenosha residence and entered the Escape. The Escape then drove away.

B. At approximately 2:48 p.m., McNab opened the front door of the Kenosha residence from the inside, grabbed a package from the front porch, and went back inside the residence.

C. At approximately 3:02 p.m., a Ford Explorer arrived at the Kenosha residence and backed into the driveway. The male driver exited the Explorer and walked to the front door. The male was carrying nothing in his hands. The door opened and the male went inside the residence. At approximately 3:04 p.m., the male exited the residence carrying a black plastic bag in his hand.[3] The male placed the bag in the trunk area of the Explorer before driving away.

D. Based on their training and experience, officers believe these two short-term contacts were for the purpose of drug sales.

23. At approximately 3:15 p.m., Nikolous McNab exited the Kenosha residence and drove away. Officers conducted a traffic stop on McNab's vehicle. McNab was taken into custody.

A. On McNab's person was approximately $340, which currency is not included in the defendant approximately $41,418 in United States currency.

B. In McNab's vehicle were a total of approximately 45.73 grams of marijuana and two cell phones.

24. During execution of the search warrant at the Kenosha residence, an individual having the initials D.G. was present.[4]

25. On January 27, 2026, the following items, among other things, were inside the Kenosha residence:

---

[2] During this time, D.G., who lived at the residence with Nikolous McNab, was sitting in D.G.'s vehicle outside the Kenosha residence.

[3] Similar looking black plastic bags were located in the basement of the Kenosha residence as referenced in paragraph 25.D.iii.

[4] Based on their investigation to date, officers believe that D.G. was not involved in Nikolous McNab's drug trafficking activities and was not arrested.

A. The door to Nikolous McNab's bedroom was locked with a number keypad. Officers breached the door. Inside the bedroom were, among other things, the following:

  i. On a dresser was a loaded firearm magazine.

  ii. In a dresser drawer was approximately $427 in United States currency, which is a portion of the defendant currency in this case.

  iii. On an end table by the bed was approximately $2,181 in United States currency, which is a portion of the defendant currency in this case.

  iv. In the closet were the following:

    a. A plastic box containing ammunition and approximately 12 firearm magazines.

    b. Two safes containing the following:

      1) The gray safe contained jewelry, various documents in McNab's name, a notebook that appeared to be a recipe on how to make dimethyltryptamine (DMT)[5], and a total of approximately $38,810 in United States currency, which is a portion of the defendant currency in this case.

      2) The black safe contained jewelry, antique spoons, collector coins and dollar bills, foreign currency, and precious metals.

B. In the kitchen were the following:

  i. In the freezer were a psilocybin chocolate bar (approximately 29 grams) and approximately 1,875.68 grams of marijuana resin.

  ii. In the pantry was a dog food container containing approximately 500 Adderall pills (approximately 244.9 grams) in 10 individual corner-cut baggies of 50 pills each.

  iii. In a drawer were two unlabeled pill bottles containing a total of approximately 39 Adderall pills (approximately 25.7 grams), two boxes of baggies, and a digital scale.

  iv. In another drawer was a second digital scale.

---

[5] DMT is a Schedule I controlled substance.

v. In a cabinet was a firearm with extended magazine containing 27 rounds of ammunition.

C. In the living room was a second firearm.

D. The basement was also locked with a number keypad. Officers breached the door. In the basement were, among other things, the following:

i. A large stand-up Winchester brand gun safe containing the following:

a. Four shoe boxes containing approximately 22 packages of THC edibles (600 mg each), approximately 114 packages of THC edibles (500 mg each), approximately 28 packages of THC edibles (1 gram each), approximately 214 pre-rolled plastic tubes of THC (blunts), approximately 68 THC vape cartridges, and a digital scale.

b. A box of approximately 100 Muha Meds THC vape cartridges (2 grams each).

c. A backpack containing one bag with approximately 534.05 grams of marijuana resin and five bags with a total of approximately 1,183.71 grams of marijuana.

d. Eight bags containing a total of approximately 2,111.95 grams of marijuana. Each bag was labeled with a different strain or flavor of marijuana.

e. Two unlabeled bags containing a total of approximately 116.04 grams of marijuana.

f. Two jars containing a total of approximately 330.61 grams of THC wax.

g. An unlabeled bottle containing approximately 99 oxycodone pills (20.6 grams) and approximately seven hydrocodone pills (1.4 grams).

ii. To the west side of the safe was a chest freezer. On top of the freezer were a vacuum food sealer[6], an open box of Ziploc baggies, empty Ball brand glass jars, two jars containing marijuana wax, a metal strainer, several jars of marijuana, and two boxes of THC vape cartridges (total of 20 vapes).

---

[6] Based on their training and experience, officers know that drug dealers use vacuum sealers to remove the moisture from the drugs, eliminating the possibility of mold growth. Vacuum sealers keep drugs fresh longer, allowing drug dealers to purchase larger quantities at a discounted price.

iii. To the east side of the safe was a shelving unit, on which were items commonly used to prepare, store, and package marijuana. Items included black food saver bags that could hold approximately one pound of marijuana, eight boxes (60 count each) of Ziploc baggies, gloves, a heat sealer, another food saver-type machine, and a box of black plastic shopping bags.

iv. A tote containing items used to manufacture THC vape cartridges, including two hot plates, syringes, electric injector, and strainer. The injector and both hot plates contained suspected marijuana oil residue.[7]

v. A wooden bump box[8] with 76 holes, and a "king size" box of rolling paper cones (labeled as 1,400 cones).

vi. Several bins containing marijuana bongs (glass smoking devices).

vii. A bag containing fourteen (14) M-type devices (explosives).[9]

viii. A storage container full of commercial-style fireworks, including one homemade device.

ix. A photo album containing photographs of Nikolous McNab holding large sums of money and holding large bags of marijuana.

26. Total controlled substances inside the Kenosha residence on January 27, 2026, were approximately 8,838.96 grams (19.5 pounds) of marijuana and THC products and edibles, approximately 29 grams of psilocybin, approximately 539 Adderall pills (270.6 grams), approximately 99 Oxycodone pills (20.6 grams), and approximately seven hydrocodone pills (1.4 grams).

---

[7] Based on their training and experience, officers know that flower marijuana must be converted to an oil to be used in vape cartridges. One such method involves extracting rosin from the buds, mixing the extracted rosin with a liquid agent and heating it. The end product can then be injected into empty vape cartridges.

[8] Based on their training and experience, officers know that drug dealers will manufacture marijuana cigarettes using a bump box by placing wraps in the holes, exposing the opening to place marijuana inside. Once the marijuana is placed inside, the wrap is closed, creating a completed marijuana cigarette to sell.

[9] The devices contained 400 times the legal amount of powder for commercial-grade ground fireworks. A member of the Kenosha County Bomb Squad analyzed these devices and categorized them as illegal improvised explosive devices.

**January 27, 2026, recorded jail calls made by Nikolous McNab**

27. On January 27, 2026, while incarcerated, Nikolous McNab made several recorded jail calls.

28. On January 27, 2026, at approximately 8:48 p.m., Nikolous McNab called a female at 262-577-4XXX, a telephone number associated with McNab's grandmother. McNab stated that "Annie" would be the one to bail him out. McNab asked, "Do you know where my thing is at your house?" The female replied, "No." McNab responded, "In [McNab's deceased brother's] urn." McNab further said, "only Annie knows I'm holding it."

29. Based on their investigation, officers know that "Annie" is a nickname for Nikolous McNab's sister, an individual having the initials R.M.

30. Based on their training and experience, and the investigation to date, officers believe that McNab knew his conversation was being recorded and did not want police to know what was in the urn. Officers believe McNab had additional money in the urn.

31. On January 27, 2026, at approximately 8:56 p.m., Nikolous McNab again called 262-577-4XXX and asked, "Can I move into your house, upstairs or something. Get an actual f***ing job…."

32. On January 29, 2026, "Annie" (Nikolous McNab's sister) paid McNab's $50,000 cash bond set by the court in his state criminal case referenced in paragraph 33. "Annie" made the bond payment with 500-$100 bills.

**Nikolous McNab's State Criminal Drug Case**

33. On January 29, 2026, Nikolous McNab was charged in Kenosha County Circuit Court, Case No. 26CF140, with (1) possession with intent to deliver narcotics, (2) possession with intent to deliver non-narcotics, (3) possession with intent to deliver THC, (4) possession of amphetamine/LSD/psilocin, (5) possession with intent to deliver prescriptions, (6) maintaining a

drug trafficking place, (7) possession of drug paraphernalia, and (8) 14 counts of possession of improvised explosives.

**Administrative Forfeiture Proceedings**

34. The Drug Enforcement Administration ("DEA") began administrative forfeiture proceedings against the approximately $41,418.00 in United States currency on the ground that the seized currency was used or intended to be used in exchange for controlled substances or was proceeds of trafficking in controlled substances.

35. On or about April 7, 2026, Nikolous McNab filed a claim with the DEA in the administrative forfeiture proceedings to the defendant approximately $41,418.00 in United States currency.

**Warrant for Arrest In Rem**

36. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

**Claims for Relief**

37. The plaintiff alleges and incorporates by reference the paragraphs above.

38. By the foregoing and other acts, the defendant property, approximately $41,418.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

39. The defendant approximately $41,418.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property be issued; that due notice be given to all interested parties to appear and show

cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 13th day of October, 2026.

Respectfully submitted,

*s/Elizabeth M. Monfils*
ELIZABETH M. MONFILS
Assistant United States Attorney
Wisconsin Bar No. 1061622
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
E-Mail: elizabeth.monfils@usdoj.gov

**Verification**

I, Austin J. Brechue, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration (DEA) in Milwaukee, Wisconsin, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 32 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with the DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Date: 10/12/2026

*s/ Austin Brechue*
Austin J. Brechue
Task Force Officer
Drug Enforcement Administration